UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MELVIN CLINTON,

    Plaintiff,

v.

STATE OF MICHIGAN, et al.,

    Defendants.
_____/

Case No. 1:24-cv-1110

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses Defendant Knizewski's motion for summary judgment, Plaintiff Clinton's motion for summary judgment and sanctions, and Defendant Knizewski's "reply brief in support of motion for summary judgment."  (ECF Nos. 12, 16, 17.)

Plaintiff Melvin Clinton filed his civil complaint on October 23, 2024. (ECF No. 1.)  Clinton, who is proceeding *pro se*, filed suit pursuant to 42 U.S.C.§ 1983, alleging that Defendants violated his Fourth and Fourteenth Amendment rights by subjecting him to false arrest, malicious prosecution, and abuse of process.  (*Id.*)  Plaintiff named the following four Defendants in his complaint: (1) the State of Michigan; (2) the 7th District Court, Van Buren County, Michigan; (3) Judge Arthur Clarke III, who is a judge of that court; and (4) South Haven Police Officer Mike Knizewski.  (*Id.*)

On November 11, 2024, the undersigned issued an R. & R. recommending that the Court dismiss on the basis of immunity: (1) the State of Michigan; (2) the 7th District Court, Van Buren County, Michigan; and (3) Judge Arthur Clarke III. (ECF No. 9, PageID.22.) The undersigned recommended that the complaint proceed against South Haven Police Officer Knizewski. (*Id.*, PageID.27.) On December 17, 2024, United States District Court Judge Paul L. Maloney issued an order adopting the R. & R. (ECF No. 10.)

On January 20, 2025, Defendant Knizewski filed a motion for summary judgment. (ECF No. 12.) First, Knizewski argues that Clinton has failed to establish a genuine issue of material fact as to his false arrest claim because Knizewski did not personally arrest Clinton. (ECF No. 13, PageID.40.) Second, the Defendant asserts that Clinton's malicious prosecution and abuse of process claims fail because he "reasonably relied on the report and information provided by his fellow officers to establish probable cause for Plaintiff's arrest and subsequent charges." (*Id.*, PageID.42.) Finally, Knizewski asserts he is entitled to qualified immunity because he did not violate Plaintiff's Fourth Amendment right to be free from false arrest or any clearly established right. (*Id.*, PageID.47.)

In the opinion of the undersigned, there remains no genuine dispute of material fact as to Plaintiff's Fourth and Fourteenth Amendment claims. It is respectfully recommended that the Court grant the Defendant's motion for summary judgment.

## II. Factual Allegations

Clinton states that on September 8, 2024, he was arrested by Defendant Knizewski of the South Haven Police Department (SHPD). (ECF No. 1, PageID.3.) Clinton says he was charged with "Assault with a Dangerous Weapon (Felonious Assault) under MCL 750.82, and Domestic Violence under MCL 750.812." (*Id.*) Clinton asserts that his arrest was carried out without sufficient evidence or a valid warrant. (*Id.*, PageID.3–4.) On September 9, 2024, Clinton was arraigned. (*Id.*, PageID.3.) He states that the charges constituted a felony and misdemeanor respectively. (*Id.*) On September 12, 2024, Clinton was released pending "the resolution of the case" on a $3,000 cash bond. (*Id.*)

Clinton says that on October 2, 2024, all charges against him were dismissed "through an Order of Nolle Prosequi, which officially closed the case and terminated all legal actions against" him. (*Id.*) Clinton explains that he has experienced "damage to his reputation, endured the stress of legal proceedings, and incurred financial loss" in addition to "loss of liberty." (*Id.*, PageID.3–4.)

## III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Verification

In ruling on a summary judgment motion, a court must decide whether a genuine issue of material fact remains. Fed. R. Civ. P. 56(a). The materials a court may consider in making this assessment are identified in Fed. R. Civ. P. 56(c). Courts, however, allow a plaintiff to rely on a "verified complaint," which has "'the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment." *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992)). To qualify as "verified," a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746. *Id.* In contrast, complaints that are unverified are not considered Rule 56 evidence. *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2 (W.D. Mich. Aug. 29, 2019) (citations omitted), *report and recommendation adopted*, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019).

The undersigned recognizes that *pro se* plaintiffs, like Adams, are held to a less stringent pleading standard than parties represented by an attorney. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008). At the summary judgment stage, *pro se* plaintiffs are thus not held to the same technical requirements as represented parties. Still, *pro se* plaintiffs must use common sense in demonstrating there exists a genuine issue of material fact.

A review of the record indicates that Clinton's complaint and motion for summary judgment lack declarations of veracity as called for in 28 U.S.C. § 1746. (ECF Nos. 1, 16.) As such, neither Clinton's complaint nor his motion for summary judgment shall be considered Rule 56(c) evidence.

## V.  ECF No. 16 – Plaintiff's Motion for Summary Judgment

On February 18, 2025, Plaintiff Clinton filed a motion for summary judgment and motion for sanctions against the Defendant's legal counsel. (ECF No. 16.) In the motion, Plaintiff argues that he sufficiently established his Fourth Amendment false arrest claim because Knizewski (1) participated in the chain of events leading to his arrest, (2) lacked probable cause for his arrest, (3) acted with malice or bad faith, and (4) because charges against him were dismissed. (*Id.*, PageID.87.) Clinton argues sanctions should be imposed upon Knizewski's counsel because "counsel submitted contradictory evidence, including an affidavit and incident report." (*Id.*, PageID.88.)

Plaintiff's motion was filed by Mr. James Demarco Bogan on Plaintiff's behalf. (*Id.*, PageID.90.) Mr. Bogan states that he submitted the motion on Clinton's behalf

because of "Clinton's current incarceration and facility restrictions on mail." (*Id.*) Although Mr. Bogan signed his name beside Clinton's typed name and the typed date, Clinton himself did not sign the document. (*Id.*, PageID.89−90.) Clinton acknowledges in the motion that he is "pro per" and makes no representation that Mr. Bogan is an attorney or that Mr. Bogan is *his* attorney in this matter. (*Id.*)

In his response in opposition, the Defendant asserts that ECF No. 16 should be struck from the record. (ECF No. 17, PageID.95.) The Defendant argues that because Mr. Bogan is not an attorney he cannot file on Plaintiff's behalf. (*Id.*)

A party in federal court must proceed either through licensed counsel or on their own behalf. 28 U.S.C. § 1654. A *pro se* litigant can only represent their own interests and can only sign pleadings on their own behalf.[1] Plaintiff must proceed either *pro se* or through licensed counsel. Because Plaintiff proceeds *pro se* and makes no representation that Mr. Bogan is an attorney or *his* attorney, Mr. Bogan may not file documents on Plaintiff's behalf. Thus, the undersigned respectfully recommends that the Plaintiff's unsigned motion for summary judgment be struck from the record.

## VI. Fourth Amendment False Arrest

In his unverified complaint, Clinton asserts that Defendant Knizewski violated his Fourth Amendment rights by arresting him without "a valid warrant, probable

---

[1]    *Falkner v. United States*, No. 11-2982-STA-CGC, 2012 WL 2682789, at *2 (W.D. Tenn. July 6, 2012) (citing *Garrison v. Fleet Fin., Inc.*, No. 97–6422, 1999 WL 282626, at *1 (6th Cir. Apr.30, 1999) ("The signing and filing of a notice of appeal on behalf of another by a person who is not a qualified attorney is ineffective to vest an appellate court with jurisdiction.")).

cause, or any legal justification." (ECF No. 1, PageID.3) Knizewski asserts that his is entitled to summary judgment because he did not arrest Clinton and thus did not have the requisite personal involvement to sustain a § 1983 claim against a government official. (ECF No. 13, PageID.42.)

Section 1983 liability cannot be imposed under a theory of *respondeat superior*, thus proof of personal involvement is required for a supervisor to incur personal liability. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir.1995). Instead, "a § 1983 plaintiff generally must prove both that a defendant was *personally* at fault and that the defendant's culpable conduct (not somebody else's) *caused* the injury." *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (emphasis in original).

In some circumstances, liability for false arrest can attach to non-arresting officers, but the inquiry still turns on probable cause for the arrest itself. *See Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) ("A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."); *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 672 N.W.2d 351, 362 (2003) ("To prevail on a claim of false arrest ... a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause.").

The Fourth Amendment guarantees the right of individuals to be free from improper arrest and detention. U.S. Const. amend. IV (" The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures.") That guarantee requires probable cause for an arrest. Accordingly, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir.2002) (citing *Painter v. Robertson,* 185 F.3d 557, 569 (6th Cir.1999)).

An officer has probable cause to arrest a suspect when the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). An objective, not a subjective, standard applies. The question is whether the observable circumstances justify an arrest; the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). This "fluid concept" looks for a "probability" that the suspect violated a criminal statute, *Illinois v. Gates*, 462 U.S. 213, 232 (1983), keeping in mind that probable cause is not "a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). In establishing probable cause, it is permissible for an officer to rely on another officer's observations. *See United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) (holding that for assessing whether probable cause exists, the court "mutually impute[s] the knowledge of all the agents working together on the scene and in communication with each other.").

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance on state law." *DeFillippo*, 443 U.S. at 36. In Michigan, "[a] peace

8

officer, without a warrant, may arrest a person . . . [for a] felony, misdemeanor, or ordinance violation [ ] committed in the peace officer's presence."  Mich. Comp. Laws Ann. § 764.15(1)(a).  Michigan officers may also arrest a person without a warrant when they have "received positive information by written, telegraphic, teletypic, telephonic, radio, electronic, or other authoritative source that another peace officer or a court holds a warrant for the person's arrest."  Mich. Comp. Laws Ann. § 764.15(1)(e).

The state of Michigan penalizes domestic assault under Mich. Comp. Laws Ann. § 750.81 (emphasis added).  The section provides in pertinent part:

> (2) Except as provided in subsection (3), (4), or (5), an individual who assaults or assaults and batters the individual's spouse or former spouse, <u>an individual with whom the individual has or has had a dating relationship, an individual with whom the individual has had a child in common</u>, or a resident or former resident of the individual's household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

The state of Michigan penalizes assault under Mich. Comp. Laws Ann. § 750.82 (emphasis added).  The section provides in pertinent part:

> (1) Except as otherwise provided in this subsection or subsection (2), a person who assaults another person <u>with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon</u> without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both. […]

Accordingly, SHPD had probable cause to arrest Clinton if, on the basis of the facts known to them, they could reasonably conclude that Clinton had assaulted his domestic partner or that Clinton had assaulted the victim with a "dangerous weapon" without intent to commit murder or to inflict great bodily harm less than murder.

9

In his unverified complaint, Clinton alleges that Defendant Knizewski "was the arresting officer from the South Haven Police Department" and that at the time of the arrest there was no "valid warrant, probable cause, or any legal justification" for the arrest.  (ECF No. 1, PageID.2–3.)

In his affidavit, Defendant Knizewski states that for the past three years, he has served as a Detective with the SHPD.  (ECF No. 14, PageID.73.)  As a Detective, one of Kneizewski's duties is to "swear to warrant requests for charges against an individual suspected of committing a crime, when the arrest or investigation is conducted by another SHPD officer." (*Id.*, PageID.74)  Knizewski explains that when he is requested to swear to a warrant request, he must review incident reports from officers that conducted the arrest or investigation.  (*Id.*)

Knizewski states that on September 8, 2024, he was not present for and did not personally arrest Clinton.  (*Id.*)  However, Knizewski states that he did submit an arrest warrant request for Clinton on charges of "felonious assault/assault with a deadly weapon and domestic violence." (*Id.*)  In making his warrant request, Knizewski relied on the reports of the arresting officer, SHPD Officer Melendez, and the investigating officer, Sergeant DeBoer.  (*Id.*)

DeBoer's supplemental report encapsulates his conversation with the alleged assault victim, the mother of Clinton's child.  (ECF No. 13-1, PageID.58.)  It states that on the day of Clinton's arrest, Clinton, his sister, and the victim were in the car on the way to South Haven.  (*Id.*)  In the car, Clinton "had a very hostile energy" and "started yelling at [the victim] because he wanted her phone."  (*Id.*)  The victim

10

"tried to tell [Clinton] that he already had it," but he "kept getting angrier." (*Id.*, PageID.59.) Clinton picked up a "blue small baseball bat" that was present in the car and engaged in a "tug of war" with the victim for the bat. (*Id.*) Clinton let the bat go and its momentum caused it to slam into the victim's head just above her left eye. (*Id.*) The group then entered the apartment. (*Id.*)

Melendez's report indicates that he was dispatched to the scene for a "domestic assault complaint" and that the assault was "no longer in process." (*Id.*, PageID.56 (Melendez Incident Report).) On arrival, Melendez learned that the victim's boyfriend, Clinton, had allegedly assaulted her inside the apartment after she refused to perform oral sex. (*Id.*) The victim reported that Clinton "got aggressive and began assaulting her in front of her children" "hit[ting] her in the head and scratch[ing] her on the face." (*Id.*) While the victim stated that she was able to remove two of her children from the room, Clinton went into the third child's room and began to assault the child. (*Id.*) In the midst of the assault, Clinton's sister allegedly handed him her car keys and told him to leave the scene in her black Malibu. (*Id.*) Clinton left the scene "in an unknown direction," taking the victim's cell phone. (*Id.*) The victim then called 911. (*Id.*) Following his interview of the victim, Melendez located Clinton in the parking lot sitting in the black Malibu, asked him to step out of the vehicle, and placed him in handcuffs when he did. (*Id.*, PageID.57.)

Knizewski states that he relied on the reports of Melendez and DeBoer, as well as their body camera footage, to determine there was probable cause for an arrest

warrant on the charges of felonious assault, assault with a deadly weapon, and domestic violence.    (ECF No. 14, PageID.75.)

In the opinion of the undersigned, there remains no genuine dispute of material fact as to Clinton's Fourth Amendment false arrest claim against Defendant Knizewski.    The Defendant states in his affidavit that he was not Clinton's arresting officer on September 8, 2024.    Even assuming Knizewski was responsible for Clinton's arrest as a non-arresting officer, there was probable cause for Clinton's arrest.    The dispatch alerted arresting officers of a domestic assault.    (ECF No. 13-1, PageID.56.)    Upon arrival at the scene, officers interviewed the victim about the alleged domestic assault.    (*Id.*)    The victim reported the events that occurred inside the car and inside the apartment.    (*Id.*)    Officers personally observed the injuries to the victim's face and head.    (*Id.*, PageID.58–59.)    Following Clinton's arrest, officers located the victim's cellphone inside Clinton's underwear.    (*Id.*, PageID.57.)    The facts and circumstances known to officers on scene and to Knizewski through those officers' reports and body camera footage gave them probable cause to believe Clinton had assaulted the victim in violation of Michigan law.    The Defendant is thus entitled to summary judgment on Clinton's Fourth Amendment false arrest claim.

## VI.    Fourteenth Amendment Due Process and False Arrest

In addition to his claim under the Fourth Amendment, Clinton asserts that Defendant Knizewski violated his Fourth Amendment rights by arresting him without "a valid warrant, probable cause., or any legal justification."    (ECF No. 1, PageID.3)    Knizewski asserts that his is entitled to summary judgment because he

12

did not arrest Clinton and reasonably relied to the reports of arresting officers for probable cause in requesting Clinton's arrest warrant. (ECF No. 13, PageID.42.)

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). A plaintiff must pursue relief under the appropriate constitutional guarantee, just as a court must apply the appropriate legal standard. *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006).

Clinton reasserts a claim for false arrest under the Fourteenth Amendment to the United States Constitution. (ECF No. 1, PageID.3.) However, when the gravamen of a complaint is for arrest or detention without probable cause, the claim cannot be pursued under the Fourteenth Amendment. *See Jackson v. Cty. of Washtenaw*, 310 F.App'x 6, 7–8 (6th Cir. 2009) (noting that the plaintiff's claim alleging detention without probable cause is not viable under the Fourteenth Amendment). Instead, such a claim must be evaluated under the Fourth Amendment. *Id.* at 7 (citing *Gregory*, 444 F.3d at 750). *See also Albright*, 510 U.S. at 275.

Consequently, Clinton cannot recover under a Fourteenth Amendment theory even accepting the Complaint's factual allegations as true. Thus, the undersigned

13

respectfully recommends that Clinton's false arrest claim under the Fourteenth Amendment be dismissed.

### VII. Fourth Amendment Malicious Prosecution and Abuse of Process

Clinton asserts that the progression of the "legal proceedings" against him resulting from his arrest on September 8, 2024 constitutes malicious prosecution and an abuse of process.[2] (ECF No. 1, PageID.4.) Defendant Knizewski argues that he is entitled to summary judgment on Plaintiff's malicious prosecution claim because he reasonably relied on the report and information of officers Melendez and DeBoer to establish probable cause for Plaintiff's arrest and subsequent charges. (ECF No. 13, PageID.43.)

The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006) (internal quotation marks omitted). Despite the name, a plaintiff need not show actual malice on the part of the defendants to prevail on a malicious prosecution claim, though some level of culpability or blameworthiness is required. *Johnson*, 790 F.3d 649, 655 (6th Cir. 2015). To establish malicious

---

[2] In his unverified complaint, Clinton asserts a claim for an "abuse of process." (ECF No. 1, PageID.4.) Clinton states only that "Defendants misused legal procedures, including the issuance of unwarranted charges and setting of bail, to accomplish an unlawful purpose." (*Id.*) Clinton says "[t]his abuse of process caused Plaintiff undue stress, financial burden, and harm to his reputation despite the charges being dismissed." (*Id.*) Clinton does not state under which Amendment he brings his abuse of process claim. The undersigned thus characterizes his claim as a malicious prosecution claim under the Fourth Amendment.

14

prosecution as a Fourth Amendment violation under § 1983, a plaintiff must show that (1) a criminal prosecution was initiated against them and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308−10 (6th Cir. 2010).

A plaintiff need not show that the officers made the decision to prosecute as long as they can show that officers influenced or participated in the decision. *Sykes*, 625 F.3d at 311. The term "participated" is construed "within the context of tort causation principles." *Webb*, 789 F.3d 647, 660 (6th Cir. 2015) (quoting *Sykes*, 625 F.3d at 308 n.5). Prosecution must have been a reasonably foreseeable consequence of the defendant's conduct, and the conduct must have actually influenced the decision to prosecute. *See Sykes*, 625 F.3d at 314–15. The officer must have participated "in a way that aids in the decision, as opposed to passively or neutrally participating," *Webb*, 789 F.3d at 660 (quoting *Sykes*, 625 F.3d at 308 n.5), which requirement is satisfied by showing some "element of blameworthiness or culpability in the participation," *Johnson*, 790 F.3d at 655.

Based on the evidence in this case, a reasonable jury could not conclude that Knizewski participated in the malicious prosecution or an abuse of process against Clinton. Documents in the case do not show that a prosecution of the charges against Clinton progressed beyond a preliminary examination. (ECF No. 13-2

(screenshots demonstrating the progression of the state case against Clinton).) In his affidavit, Defendant Knizewski's provides that he was not Clinton's arresting officer on September 8, 2024. (ECF No. 12, PageID.74−75.) As discussed above, Knizewski reasonably relied on the reports of the arresting officer and the investigator to determine there was probable cause for an arrest warrant on the charges of domestic violence and felonious assault. While Clinton was briefly jailed after his arrest, he acknowledges that he was released on bond September 12, 2024. (ECF No. 1, PageID.3.) Charges against Clinton were dismissed following an order of *nolle prosequi* on October 2, 2024. (ECF No. 13-2, PageID.61.) Clinton's bond was refunded on the same date. (*Id.*, PageID.62.) Clinton makes no accusation in his unverified complaint that Knizewski influenced the prosecution against him and makes no accusation that Knizewski relied on false statements or information in requesting the warrant for Clinton's arrest. (ECF No. 1.)

In the opinion of the undersigned, Clinton has failed to create a genuine issue of material fact as to his malicious prosecution and abuse of process claims against the Defendant.

### VII.  Qualified Immunity

Defendant argues that he is entitled to dismissal of the complaint against him based upon qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

16

*Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to

17

be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 78 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63−64 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate. *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

The Defendant argues that because he did not violate Clinton's constitutional rights he is entitled to qualified immunity. The undersigned agrees; the Defendant is entitled to qualified immunity because there are no genuine issues of material fact suggesting that Defendants violated Clinton's Fourth or Fourteenth Amendment rights. *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

### VII. Recommendation

It is respectfully recommended that the Court grant the Defendant's motion for summary judgment and dismiss the case.

Dated:   July 10, 2025                                /s/ *Maarten Vermaat*
                                                     MAARTEN VERMAAT
                                                     U.S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).